IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Civil No. 3:21-cv-00027 |
| Plaintiff, ) | |
| ) | VERIFIED COMPLAINT FOR |
| v. ) | FORFEITURE *IN REM* |
| ) | |
| $24,020.00 IN U.S. CURRENCY, ) | |
| $15,080.00 IN U.S. CURRENCY, and ) | |
| $3,380.00 IN U.S. CURRENCY, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action to forfeit and condemn specific property ("Defendant property") to the use and benefit of the United States of America ("Plaintiff") for involvement, as set forth below, in violations of 21 U.S.C. § 846 (attempt and conspiracy), and 21 U.S.C. § 841(a)(1) (Prohibited acts A).

2. The United States believes the Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code, and proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of said subchapter.

## II. DEFENDANT *IN REM*

3. The Defendant property consists of the following sums of currency, seized on September 18, 2020 at 1420 North Harrison Street, Apartment 324, Davenport, Iowa:

> $3,380 in a laundry basket, with some clothes and shoes;
>
> $24,020 in a silver laundry hamper, including multiple $1,000 stacks rubber-banded together; and
>
> $15,080 on the floor under a dresser, in three bundled stack of between $5,000 and $5,080 each.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this case, pursuant to 28 U.S.C. Section 1345 (United States as plaintiff), as an action commenced by the United States of America, and pursuant to 28 U.S.C. Section 1355(a) (Fine, penalty, or forfeiture), as an action for forfeiture.

5. This Court has *in rem* jurisdiction and venue over the Defendant property, pursuant to 28 U.S.C. Sections 1355(b) (Fine, penalty, or forfeiture) and 1395(b) (Fine, penalty, or forfeiture), because acts or omissions giving rise to the forfeiture occurred in this district and because the Defendant property was seized from and is located in this district.

## IV. FACTS

6. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

7. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

8. Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these controlled substances under medical supervision. 21 U.S.C. § 812(b)(1)(A)-(C).

9. Marijuana is a Schedule I controlled substance.

10. Only persons registered by the Attorney General of the United States in accordance with rules and regulations promulgated by the Attorney General may legally manufacture or distribute controlled substances. 21 U.S.C. § 822(a), (b).

11. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance, unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

12. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions. 21 U.S.C. § 846.

13. None of the persons involved in the offense conduct in this matter are authorized under federal law to distribute marijuana.

14. It is believed that evidence will, after a reasonable opportunity for further investigation and discovery, show that the Defendant property constituted the proceeds of one or more prohibited controlled substance offenses, or was used or intended to be used to facilitate one or more prohibited controlled substance offenses.

15. The Defendant property is believed to be the proceeds of a conspiracy to illegally distribute controlled substances, in violation of federal law, specifically proceeds of the conspiracy earned by, and/or at one time under the control and custody of, Erin Tyrell Rice.

16. Erin Tyrell Rice was convicted in Scott County, Iowa in 2009 of possession of a controlled substance.

17. Erin Tyrell Rice was charged in Scott County, Iowa in 2009 with possession of a controlled substance.

18. Erin Tyrell Rice was convicted in Scott County, Iowa in 2011 of a Class D felony, controlled substance violation, namely possession with the intent to deliver marijuana, and was also adjudicated guilty of violating his probation.

19. Erin Tyrell Rice was convicted in Scott County, Iowa in 2012 of a Class D felony, controlled substance violation, namely possession with the intent to distribute marijuana, and was also charged with another Class D felony, possessing or distributing a controlled substance without a tax stamp.

20. Erin Tyrell Rice is familiar with the concept of the government forfeiting property from a person, due to his involvement in a state *In Rem* forfeiture matter in Scott County, Iowa in 2012.

21. Erin Tyrell Rice was adjudicated guilty in 2020 in Scott, County, Iowa of illegally having a dark or tinted windshield on his vehicle.

22. Drug dealers and others engaged in illegal activities are known to have cars with tinted or darkened windows in an effort to conceal their identities or activities from others, including law enforcement.

23. Erickah J. Jensen was charged in Scott County, Iowa in 2004 with theft, 2nd degree and forgery, both Class D felonies.

24. Erickah J. Jensen was convicted in Scott County, Iowa in 2003 with a crime involving dishonesty, namely making a false report to law enforcement.

25. Erickah J. Jensen was charged in Scott County, Iowa in 2009 with illegally having a dark or tinted windshield on her vehicle.

26. Sedric Mayes and Erin Rice have been involved, for a significant period of time, in working together to illegally sell marijuana in the Quad Cities area of Iowa.

27. Drug traffickers commonly use a residence, often other than their own, to serve as a base of operation for their business.

28. At such a residence, drug traffickers often break down large quantities of drugs into street-level resale quantities.

29. Drug dealers often store drugs, drug proceeds, and related items at the base of operations and at their own residences.

30. Drug traffickers often travel commercially, both domestically and internationally, to receive and distribute drugs and/or drug proceeds, especially when the source of supply for the drugs is from out of state.

31. In March 2018, law enforcement made a traffic stop of Sedric Mayes, when he was driving a rented vehicle. In the car was a shipping receipt for a 15-pound package being mailed from California to Davenport, Iowa. Mayes suspiciously said he had flown to California and driven back within 20 hours, and had no explanation for why.

32. In June 2019, Sedric Mayes was stopped by Nebraska law enforcement in a rental car, with Erin Rice as his passenger.

33. A probable cause search of the rental car discovered a raw odor of marijuana, a vacuum sealer, rolls of vacuum sealed packages, and $3,000 in U.S. currency.

34. Drug dealers are known to vacuum seal illegal drugs, as well as money generated from drug sales, in vacuum sealed plastic wrapping, in an effort to try and keep others, particularly law enforcement, from detecting what is stored within the wrapping, such as marijuana with its distinctive smell, or money contaminated with the smell of illegal drugs.

35. At times relevant to the conspiracy of which the Defendant property was a part, persons travelled to and from other states, including California, to obtain marijuana for Erin Rice and Sedric Mayes.

36. California is a known drug / marijuana source state.

37. In June through August 2020, law enforcement learned several packages that smelled of raw marijuana, ranging in weight from 20 to 30 pounds, were being shipped to an address in Davenport, Iowa, namely 1357 W. 38th Street, from a fictitious address in Las Vegas, Nevada.

38. Specifically, over several months in 2020, law enforcement learned several packages ranging in weight from 18 to 90 pounds, emanating the strong odor of marijuana, were delivered via mail to 1357 W. 38th Place, Davenport, Iowa.

39. Drug dealers often use fictious addresses in order to hide the locations from which they are truly storing and shipping illegal drugs, to avoid detection.

40. Drug dealers often have their illegal drugs delivered to addresses other than their own residences in order to direct law enforcement away from their own homes as being involved as places where drug and drug-related items are stored, where drug deals occur, and which are otherwise involved in or funded by drug dealing.

41. On June 25, 2020, Sedric Mayes, driving a red 2018 Dodge Charger SRT Hellcat picked up two packages from this residence right after they arrived, having waited hours outside the residence for them to arrive.

42. On July 6, 2020, Sedric Mayes picked up another package, using the same car, from the same address.

43. On July 20, 2020, Sedric Mayes picked up another package, using a different vehicle, from the same address.

44. On August 14, 2020, Sedric Mayes arrived at 1357 W. 38th Street, Davenport, Iowa, where he had been collecting packages believed to contain marijuana.

45. While at this residence, Sedric Mayes took receipt of another large box delivered in the mail and transported it to a residence on Eastern Avenue in Davenport.

46. On August 28, 2020, Sedric Mayes took delivery of another package delivered to 1357 W. 38th Street, Davenport, Iowa.

47. On September 16, 2020, law enforcement learned from a postal inspector that a package originating from Las Vegas, Nevada, weighing approximately 16

pounds, and smelling of raw marijuana, was to be delivered to 1357 W. 38th Street, Davenport, Iowa.

48. Sedric Mayes, Erin Rice, and others congregated at the 1357 W. 38th Street, Davenport, Iowa to facilitate their drug dealing.

49. Law enforcement know that Erin Rice sold marijuana to other people in the Quad Cities area of Iowa by at least 2020, if not earlier.

50. At a time when Erin Rice was known to be unemployed, he was seen with large amounts of cash and a Rolex watch, which is indicative of someone making money from illegal activity, such as drug-dealing.

51. Erin Rice, at time relevant to the conspiracy, traveled on multiple occasions to California by airline, traveling back – via Las Vegas, Nevada – by car.

52. After Rice returned to the Quad Cities, a package typically arrived from Las Vegas via the mail, consistent with Rice mailing back a portion of his marijuana.

53. Sedric Mayes used his cell phone, with the number 563-676-1608, to communicate with others about illegally selling marijuana, and even had images of marijuana on his phone.

54. On September 4, 2020, Nebraska law enforcement stopped a rental vehicle with Erin Rice inside, which also contained 20 grams of marijuana, $1,200 in U.S. currency, and $6,000 - $8,000 in clothes and accessories recently purchased with cash in Las Vegas.

55. On September 18, 2020, law enforcement in the Quad Cities part of Iowa executed numerous search warrants in connection with an investigation into drug-dealing activities by Rice and his associates.

56. Among other things, law enforcement seized approximately 25 pounds of high-grade marijuana.

57. During the searches conducted that day by law enforcement related to the investigation herein, they seized 2½ pounds of marijuana, two digital scales, and other bags of marijuana ready for distribution from a Buick Lacrosse vehicle registered to Erickah Jensen.

58. Law enforcement have been informed Jensen holds/stores drug proceeds for Rice.

59. Law enforcement executed a valid state search warrant on September 18, 2020 at 1420 North Harrison Street, Apartment 324, Davenport, Iowa, seeking evidence of drug dealing.

60. 1420 North Harrison Street, Apartment 324, Davenport, Iowa was Jensen's residence.

61. She is the only adult believed to live there at the time.

62. While searching the master bedroom closet, law enforcement found the following:

>$3,380 in a laundry basket, with some clothes and shoes;
>
>$24,020 in a silver laundry hamper, including multiple $1,000 stacks rubber-banded together; and
>
>$15,080 on the floor under a dresser, in three bundled stacks of between $5,000 and $5,080 each.

63. A properly trained drug-detection dog conducted a free air sniff of the $3,380, the $24,020, and the $15,080.

64. The properly trained drug-detection dog alerted to the presence of controlled substances on all three bundles of money.

65. This alert meant that the money had, recently, been in close proximity of one or more strong-smelling controlled substances, which caused the odor to permeate or stick to the money.

66. Jensen claimed $35,000 in her bedroom was money she had been saving.

67. Jensen told law enforcement the money in the laundry basket and hamper belonged to her.

68. Jensen told law enforcement the $15,080 was not hers, and perhaps belonged to Rice.

69. When Jensen was asked if she had ever travelled to California with Rice when he flew there to pick up marijuana for resale in Iowa, she replied she had flown to California with him in the past, but that she flew back on her own and Rice drove back in a rental vehicle.

70. It is common for drug-dealers to travel from drug-related meetings, rendezvous, or business in other states in rental vehicles, which cannot be readily connected to them, and cannot be forfeited from them if they are caught by law enforcement.

71. Jensen said she was the co-owner of Ma Beaute Boutique and Pole Haus.

72. Neither of these businesses was listed as a registered business entity with the Iowa Secretary of State.

73. Ma Beaute Boutique is, however, advertised on the Internet as a women's clothing store at 3548 Brady Street, Suite 3, Davenport, Iowa.

74. Pole Haus Fitness is also advertised on the Internet as a pole, hip-hop and belly dancing studio and yoga center at 3548 Brady Street, Davenport, Iowa.

75. Law enforcement did not conduct a search of either of these two businesses, nor did it take any action to prevent Jensen from accessing her personal or business bank records.

76. Jensen also advised she gets money when she is unemployed.

77. Jensen advised that, rather than losing money since the COVID-19 pandemic beginning approximately 6 months earlier, she had actually been able to save $35,000.

78. Jensen also stated she had acquired money from the following sources:

   a) $8,000 from her tax refund;

   b) $10,000 from unemployment;

   c) $6,000 and $5,000 in grants from the Small Business Administration; and

   d) $13,000 saved from dancing as a stripper.

79. Jensen stated Rice had a key to the apartment and had stayed there in the past.

80. Law enforcement believed Jensen was unemployed at the time of the search, and without a legitimate means of income to account for the seized Defendant property.

81. The U.S. Drug Enforcement Administration initiated a timely administrative forfeiture action again each of these bundles of money.

82. On or about December 18, 2020, Erickah Jensen essentially filed three identical claims contesting the administrative forfeiture of the Defendant property.

83. The claim forms advised Jensen a false statement or claim may subject her to criminal prosecution, and a frivolous claim might subject her to a civil fine.

84. In her claim, Jensen stated the following:

The money was legally obtained through the course of business in the companies she manages and including her life's savings. Claimant asserts 100% rights in the property seized. All of the supporting documentation has been seized by the DEA.

85. Jensen caused her attorney to sign the claim on her behalf, attesting it true and correct to the best of her knowledge.

## V. COUNT ONE
### (FORFEITURE UNDER 21 U.S.C. § 881(a)(6))

86. Plaintiff repeats and realleges each and every allegation set forth above.

87. The United States has reason to believe the Defendant property constitutes moneys or other things of value furnished or intended to be furnished in exchange for a controlled substance, and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, and § 846 et seq.

88. As a result of the foregoing, the Defendant property is liable to condemnation and to forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(6).

## VI. CONCLUSION

WHEREFORE, the plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the Defendant property; that notice of this action be given to all persons known or thought to have an interest in or right against

the property, that the Defendant property be forfeited to the United States, and that it be awarded its costs and disbursements in this action, and such other and further relief as the Court deems proper and just under the facts and applicable law.

        Respectfully Submitted,

        Richard D. Westphal
        Acting United States Attorney

By: */s/ Craig Peyton Gaumer*
        Craig Peyton Gaumer
        Assistant United States Attorney
        U. S. Courthouse Annex, Suite 286
        110 East Court Avenue
        Des Moines, Iowa 50309
        Tel: (515) 473-9300
        Fax: (515) 473-9292
        Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, , Jay L. Bump, hereby verify and declare under penalty of perjury that I am a Special Agent and that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as Special Agent with the Drug Enforcement Administration.

Dated: March 12, 2021.

Jay L. Bump, Special Agent
Drug Enforcement Administration